Good morning. May it please the Court, my name is John Conley, and I represent the appellant Lisa Zuress, who is present in court with us today. I'd like to reserve three minutes for rebuttal. This case involves a single question of law. Did the 1997 amendment to 10 U.S.C., section 10216a, supersede the intragovernmental immunity doctrine of ferries versus the United States and its progeny, as that doctrine applies to military technician claims under Title VII? Would you believe the answer to that? If we agree with you, then we have to overrule Meyer, correct? If you agree with me, Your Honor, you have to overrule Meyer. Okay. And if we don't, then Meyer stands and you agree that Meyer would preclude relief? Yes, Your Honor. All right. If Meyer is held to, after this case, to still be the existing law in this circuit, then, yes, her claims would be precluded. I just want to make sure we're proceeding on the same case. Yes, Your Honor. I mean, there's no secret as to what we're asking today. We're relying very heavily, obviously, as you can see from our briefs, on the Federal Circuit's decision in Gentop versus the United States. You know, in that decision, the Federal Circuit looked at the 1997 amendment to 10216a and looked at the plain language of that statute, which added the phrase and any other provision of law to the definition of military technician. Specifically, what the amendment stated was, for purposes of this section and any other provision of law, a military technician dual status is a Federal civilian employee who is required as a condition of that employment to maintain membership in the selected reserve. It's the addition of the phrase and any other provision of law that we believe, as did the Gentop Court, supersedes, legislatively supersedes, this Court's decision in Meyer and the Ferry's Doctrine, as it's been called in its progeny. The Federal Circuit, in looking at the change to the 1997 amendment to 10216a, actually considered this Court's opinion in Meyer. And because this Court's opinion in Meyer was rendered in 1995, two years before the congressional amendment, the Gentop Court concluded that it was, in their words, to apply the congressional mandate as found in the military technician definition, instead of following case law, judicial case law, that had preceded that congressional amendment. Well, that was an equal pay case. Why do you believe it applies in a Title VII context? Your Honor, I believe it's all sort of part and parcel of the same philosophy that's found in Meyer and in Ferry's, which is that military personnel should not be allowed to sue for discrimination against their superiors. So whether it's an equal pay claim that's being espoused because of the discrimination, or it's a Title VII retaliation claim, or it's a Title VII discrimination claim, I don't believe that's necessarily germane to the issue of can a military technician bring a claim of discrimination under whatever law against their superior officer. And we believe that, as did the Gentop Court, that this Court should just strictly apply the plain language of 10216a, as opposed to delving into the congressional record, which is what the government is asking this Court to do. The government suggests that if you look at the congressional record, specifically House Report No. 105-132, which is related to the 2007 amendments of the Military Technician Act, that House Report states that there was a difference in definition between the Appropriations Act and the Authorizations Act for the previous year, and that was what the House was trying to do when it amended the Military Technician Statute. We believe that that is not necessarily supported by the congressional record, that all the House was trying to do or all Congress was trying to do was to define, to provide a single nomenclature, if you will, for a military technician. We don't believe that that's exactly what the congressional record says. If you continue to read Section 522 of House Report 105-132, which is what the government is relying on, it first sets forth the definition of a technician. It doesn't merely designate what a technician is supposed to be called. It then describes how the government is going to phase out non-dual status technicians. Ms. Zares is a dual status technician, meaning she was required to maintain her position in the Selected Reserve in order to keep her civilian job. At the time, there were also, and there probably still are if you hang around, non-dual status technicians who aren't required to be members of the Selected Reserve. So Congress was trying to phase out those non-dual status technicians, and that's in the congressional record as well. And then the last thing that they mention in the congressional record is that Congress was requiring both the Secretary of Defense in coordination with the Director of Office of Personnel Management, so both the Secretary of Defense and the Director of OPM, to develop a legislative proposal for fiscal year 1999 that would establish or clarify guidelines for the hiring, management, separation, and retirement of military technicians. So to simply look at the congressional record and say, all it did was choose a single name that we're going to call these military technicians, I believe is a very narrow view of what that congressional record says. I think it's equally, at least equally reasonable to interpret the comments in the House report as evidencing Congress's intent to amend the definition of 10216a to address that increase, the plussing up in the number of military technicians, the phasing out of the non-dual status technicians, and then to provide guidance to both the Secretary of Defense and the Director of OPM regarding personnel matters such as hiring, management, separation, and retirement. So from that context, in that context, to then look at what the final legislative language is, which says for all provisions of law these military technicians are going to be treated as federal civilian employees, I think you could easily interpret the congressional record to support that position as well. But that's not our primary argument. Our primary argument is that there's no reason to sift through the tea leaves of the congressional record to try to discern what Congress was attempting to accomplish. We just need to do what this Court has done many times in the past, look at the language of the statute. And the analysis in this case begins and ends there. The plain language of the statute says that these folks are supposed to be treated as federal civilian employees for all laws, including Title VII, without exception. And that's what the Gentop Court found, and that's what we ask this Court to find. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court, I'm Lowell Sturgill from the Department of Justice representing the Secretary of the Air Force. From our perspective, it couldn't be clearer from the House report exactly what Congress had in mind when it enacted the statute. How about standing with the statute? Sure. The statute says exactly what the plaintiff says it says, that these people are treated as civilians with respect to any provision of law. I note that the prior statute also said these people were viewed as civilian employees. So this change that Congress made didn't suddenly take them from being a military employee to a civilian. They were labeled civilian before. But they've always been understood to be dual-status employees of both the military and the military. What was the change then in the law? What the change said was that they would be considered civilian employees with respect to any provision of Federal law. So the question is — Isn't that a change? Yeah. So the question is, what does that mean? And I think you look to the House report, and you find out exactly — No. We start with the statute, and we may, as he did, end with the statute. If the statute is plain, we don't have to go to the House report. Well, I think it's — but the courts also say it's proper to look to legislative history — Yes, but not to stay with the statute. To determine whether the statute is plain or not. Yes. In our view, the statute is not plain, because when you look at the legislative history — Really? Murky? Yeah. Because you're trying to figure out what other — what that means, what other provisions of law means. And what the — what the history says is that these provisions, this provision was — this language was meant to be a technical amendment that changed — adopted a uniform definition of this job category and eliminating the inconsistency that existed in two prior statutes. That's reading straight from the report. But what's unclear about any other provision of law? The fact that you don't know whether that means that they're supposed to be treated as — as purely civilian, even when the military context is involved. And the plaintiffs in this case don't contest, as Meyer said, that when a dual-status employee challenges — brings retaliation claims against their military superiors, that implicates the military mission. And in that respect, Congress has never intended for these sorts of individuals to be able to bring employment discrimination suit. That's what Meyer said, even though at the time Meyer was decided, the statute said that these people were civilian employees. So really nothing changed with respect to substantively in 1996, other than Congress, as the House report tells us, fixed this technical glitch in the language of the statute. In fairness, it does go — it doesn't just say this is a technical amendment. You've heard the argument of counsel, and in fact, the House report does go on to make these other observations. I mean, the House report goes on to say that. Right. But those other — those changes that it made are not relevant to the issue that the plaintiff brings in this case, are not relevant to the change, the addition of the language or other — or for any other law. When Congress — Well, I think his point — sorry to interrupt, but I think his point is a little broader than that, is that it's just not — this isn't just a technical amendment. It was trying to effectuate a substantive change in the law, which goes to your point, that it really wasn't. It was just cleaning up some language. Well, the other aspects of the law were substantive, but the one that he's relying on wasn't. That was just a technical change, and that's what the House report tells us. This section would remove the inconsistencies by defining a military technician as a — as a military technician dual status, a reading from the report. So when you look at what he's relying on, the particular phrase from the statute that's in question, the House report says that one was technical. Other aspects might have been substantive, but this one was technical. And — Well, Mr. Sergio, I know you don't want to get — you don't want to stay with the statute, but it seems to me we're dealing in an era when the Supreme Court of the United States has been pretty emphatic in saying you look at the plain text, and unless there's some problem in the plain text, we don't go into — we — you know, the Supreme Court takes the view legislative history is easy to make up and sort of vague and malleable. You look at the plain text. Now, what is ambiguous about any other provision of law? It's ambiguous whether that means that Congress was intending to waive the United States sovereign immunity for these kinds of suits, which every court prior to that statute had said cannot be brought. Waivers of sovereign immunity have to be — have to be specific. That's why even the — the Title VII provision they rely upon says, for example, that employees of the military departments can bring Title VII suits. But this Court and all the other circuits say even though that's the language, Congress didn't intend for military people to be able to sue under that section. And you've got the same kind of situation here. Congress requires specific statements about the military. But Congress has a more generous view and they use very generous language. I think the language here is exactly — is open to the same ambiguities, so to speak, as the Title VII language itself, which the plaintiffs concede, you know, has been interpreted to say military people can't sue for military-related judgments. I have to say that if Congress was really meaning to effectuate this sort of sea change in the law, to overrule decisions from all the circuits that have addressed this question, to open up the United States that damages actions not only under this statute but the Rehabilitation Act, Equal Pay Act, all the civil rights statutes, it would have said something to that effect in the history or in the statute. You know, we have a whole lot of legislation that's passed with this kind of language in that we have to construe all the time. And ARERA and AEDPA were passed very quickly without much legislative history using — and we've had to construe that very phrase, notwithstanding any other provision of law in a variety of contexts. So I agree with you it would be desirable if Congress told us what they really meant, but sometimes they just pass it and we have to construe it. Right. But I think in the area of waivers of sovereign immunity — and that's what this would be. That's what they want. They want a waiver of the United States sovereign immunity for suit for damages. The Supreme Court is clear. You need a clear statement. This isn't clear enough for the same reason the Supreme Court and the other courts have held that the Title VII language itself, which says employees of military departments can sue under Title VII, that's not clear enough to authorize these kinds of suits. I've said the Fifth Circuit and — I understand your — your reference to the prior case law in this particular area, but do you have any cases that just construe that phrase that you, in other contexts from our circuits, you can rely on for — for guidance? The Fifth Circuit in two cases, one of which is Williams v. Winn, looked at the Gentoff decision from the Federal Circuit, looked at this particular language, and said that Congress, it was not specific enough to constitute a waiver of sovereign immunity. We think the Fifth Circuit was correct. No other circuit has addressed this issue. Gentoff addressed a related question, whether this language would constitute a waiver of the Equal Pay Act. We think that the Court was wrong. And the Court — none of the courts have addressed the legislative history, which I think in the end what we're looking for is to try — is to figure out what Congress was doing. Here, they told us what they were doing, and I think it's — that's what it is. And to not respect that, I think, would be really just not trying to figure out what the answer to the problem is. That's my view, anyway. I think, as Judge Noonan has pointed out, though, we are in an era where the analysis of legislative history, at least from the Supreme Court, has changed a bit. Well, I think they still look at legislative history. Didn't Justice Scalia say legislative history is like going into a cocktail party and looking for a friendly face or something like that? Justice Scalia has, I think, a dimmer view of the use of legislative history than the other Justices on the Court. And I think they still do look at legislative history to figure out what Congress' intent was, whether the language is plain enough, particularly — particularly in this context when you're talking about a waiver of the United States' sovereign immunity, and in a context where we're talking about trying to honor the Court's longstanding obligation to avoid intruding in the military mission, where Congress has clearly not authorized that. And here, this would certainly intrude on the — on the military mission. And the courts — Shearer v. United States Supreme Court said that for courts to second-guess military judgments about relationships between military superiors and soldiers is — would intrude on the military mission in ways that Congress never authorized. And that's what you have here. You have a complaint. Basically, this person says that her military superiors wrongly denied her leave without pay, wrongly caused her to resign. Everything she alleges in the complaint goes to — right back to the relationship between her and her military superior. She concedes that in her job, all the duties she engaged in, both on the civilian side and the military side, were all same duties, no matter which hat she was wearing. She reported to the same military commander, both in her civilian and her military duties, and she concedes that — again, she concedes that her claims would require the Court to second-guess military judgments. So for the same reasons in Meyer, you refuse to do that on a claim that also involved retaliation claims against the superior. She concedes those claims are exactly on point here. So my time has run out. I'd be happy to continue, but if you don't, I'll — Roberts. All right.  Thank you for your argument. We'll hear rebuttal. It's obvious, just from the last 10 minutes or so, that the legislative history is murky, that we couldn't interpret it the way that I believe it should be interpreted. We could interpret it the way that the government believes it should be interpreted. And we have two circuits going somewhat different directions. Right. And then you have the Fifth Circuit looked at it one way and the Federal Circuit looked at it the other way. I think the correct method was the Federal Circuit's method, which is forget about the legislative history. Let's just apply the law. And Gentop was decided four years ago. The Appropriations Act comes up every year. If Congress had wanted to overturn the Gentop decision, they could have. They've had at least three chances to do it, and they haven't. And the argument that under no circumstances has the court ever delved into making decisions that involve the relationship between a military person, a soldier or a sailor or an airman, in this case an airman, and their military commander is false. The courts have done that. The government's own case, which it cited, Jordan v. National Guard Bureau from the Third Circuit in 1986, involved a Section 1983 claim for injunctive relief against a military commander, and that injunctive relief was granted. And the Third Circuit went through a very detailed analysis about the history of granting injunctive relief, such as perhaps reinstatement. Even if it involves a military officer and one of their subordinates. So it's not, I should say, it's not accurate to say that the courts have never delved into the relationship between a military commander and their subordinate. And not only have they delved into it, they have actually granted relief in certain circumstances. Thank you. Yeah, thank you, counsel. Thank all of you for your arguments and the briefing. I thought the presentations were excellent today in the briefs. So the case just heard will be taken under submission for decision.
judges: Hall, Noonan, Thomas